IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FIREMAN'S FUND INSURANCE COMPANY, )
etc., )
 )
               Plaintiff, )
 )
   v. )   No. 07 C 3324
 )
PRATT & WHITNEY POWER SYSTEMS, )
INC., )
 )
        Defendant and )
        Third Party Plaintiff,)
 )
   v. )
 )
INTEGRATED SEPARATION SOLUTIONS )
LLC, )
 )
        Third Party Defendant.)

## MEMORANDUM OPINION AND ORDER

This diversity case originated as a subrogation action brought against Pratt & Whitney Power Systems, Inc. ("Pratt & Whitney") by Fireman's Fund Insurance Company ("Fireman's Fund"), which had made good on its insurance coverage of the total loss of an expensive (over $250,000) reverse osmosis and EDI water treatment unit ("Unit") in the course of its transportation via truck provided by Fireman's Fund's subrogor R.S. Maher & Son, Inc. ("Maher"). Maher had been engaged to provide the transportation from manufacturer Integrated Separation Solutions LLC ("Integrated") to purchaser Energy Services, Inc. ("Energy Services"), and the loss was caused by the oversized container in which the Unit was being constructed and was being transported.

Pratt & Whitney, Fireman's Fund's target in the underlying Complaint, is an Energy Services affiliate that has in turn advanced a Third Party Complaint ("TPC") against Integrated on the premise that the latter, which had contracted to construct the Unit and to do so inside a cargo container with specified dimensions, was liable to Pratt & Whitney for any damages that it might have to pay to Fireman's Fund. TPC Count II sounds in breach of contract, predicated on the indemnification provision of the Unit's Purchase Order that extends not only to buyer Energy Services but also to "its affiliated companies" (TPC ¶3 alleges that Energy Services "is a corporation affiliated with [Pratt & Whitney]"). Here is the Purchase Order's Indemnification/Hold Harmless provision that Pratt & Whitney seeks to bring into play, with the critical language in dispute underscored:

> To the fullest extent permitted by law, Seller [Integrated] covenants and agrees at all times to protect, defend, hold harmless and indemnify Buyer [Energy Services] and its affiliated companies and their respective directors, officers, employees, successors and assigns from and against any and all claims for loss, costs (including reasonable attorneys' fees), damage or injury and from and against any suits, actions, or legal proceedings of any kind brought against or sustained by Buyer, or such other parties by or on account of any person, persons, or entities, or on account of any personal injuries or <u>property damage</u> received or sustained by and [sic] person, persons, or entities including Buyer in any manner (howsoever arising, including but not limited to, by reason of negligence, breach of warranty, defect in design, material, workmanship, services, environmental, health or safety laws or regulations or otherwise, and even

2

though strict liability be claimed), <u>directly or indirectly caused by, incident to, or growing out of</u> defects in the design, manufacture or materials used in the goods, or <u>negligence in the manufacture or installation of the goods or any other services</u> or the breach of any warranties contained in this order.

Now Integrated has filed a motion to dismiss the TPC Count II breach of contract claim, and the parties have joined issue via memoranda directed to that motion. Although the Purchase Order looks to Connecticut law (including Connecticut's choice-of-law principles) for the rules of decision, neither side has identified any special Connecticut doctrine that would supplant ordinary Contract 101 principles. And of course the familiar federal pleading principle of accepting Pratt & Whitney's well-pleaded allegations as gospel controls here.[1]

According to TPC ¶6, Integrated's proposal for construction of the Unit specified that it was to be built inside a standard 40' x 8' x 8' cargo container, and TPC ¶8 says that representation continued to be made both orally and in writing during the ensuing six months. When Pratt & Whitney then contracted for transportation of the Unit via interstate truck, the bill of lading repeated those dimensions in reliance on Integrated's representations. But those repeated representations turned out to be false (and grievously so), because one of the

---

[1] Nothing about this lawsuit brings the sometimes more stringent approach of <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1965, 1973 n.14 (2007) into the mix.

3

dimensions--the height of the cargo container--turned out to be 9-1/2 feet (114 inches) rather than the promised 8 feet. As a result the Unit, then being transported by Maher south on Interstate 90/94 near "Hubbard's Cave" in Chicago, struck the Polk Street overpass and was knocked off the trailer onto the interstate highway, resulting in the total loss already referred to.

There is no contention that the misrepresentation at issue amounted to "negligence in the manufacture or installation of the goods"--the Unit. Instead the parties have crossed swords over the meaning of "any other services" in the Purchase Order's indemnification provision. Although Integrated has filed not only an initial memorandum in support of its motion but also a supplemental memorandum in response to this Court's oral directive when the motion was first presented, neither of those memoranda negates the clear plain-meaning reading of Integrated's contractual undertaking to provide protection against negligence in its rendition of "any other services."

To be sure, Integrated is correct in arguing that the Unit constitutes "goods"--but that is really an irrelevancy, for that contention misses the mark entirely when Integrated seeks to extend its approach to the misrepresentation regarding the cargo container. On that score, what is singularly absent from Integrated's presentations is any reference to the Purchase

4

Order's Definition 7, which specifies:

> "Services" means any effort supplied by Seller incidental to the sale of goods by Seller under a Purchase Order.

It cannot be gainsaid that Integrated's initial and repeated representations as to the Unit's dimensions, with the cargo container being so integral to the transportation and delivery of the completed Unit, was an "effort...incidental to the sale of [the Unit]."

In sum, TPC Count II would survive dismissal even under a less generous approach than that mandated by Fed. R. Civ. P. 12(b)(6) and the caselaw interpreting and applying that Rule. Hence Integrated's motion to dismiss is denied, and it is ordered to answer TPC Count II on or before January 8, 2008. This Court will retain the presently-scheduled January 9 status hearing to discuss the future course of this lawsuit.

_____
                      Milton I. Shadur
                      Senior United States District Judge

Date:  January 2, 2008